# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

October 1, 2014

Lyle W. Cayce
Clerk

No. 14-20267

MM STEEL, L.P.,

Plaintiff–Appellee

v.

JSW STEEL (USA) INCORPORATED; NUCOR CORPORATION; RELIANCE STEEL & ALUMINUM COMPANY; CHAPEL STEEL CORPORATION; ARTHUR J. MOORE; AMERICAN ALLOY STEEL, INCORPORATED,

Defendants–Appellants

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 4:12-CV-1227

Before JONES, CLEMENT, and PRADO, Circuit Judges.

PER CURIAM:[*]

Before the Court is Defendant–Appellant JSW Steel (USA) Inc.'s ("JSW") Motion for Stay of Execution of Judgment Pending Appeal, filed June 20, 2014. JSW also moves to seal the appendix attached to its motion. We deny the motion for stay, and grant the motion to seal.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-20267

## I.    BACKGROUND

In this antitrust case, Plaintiff–Appellee MM Steel, L.P. ("MM Steel"), obtained a judgment for over $150 million jointly and severally against multiple defendants, including JSW.  JSW now seeks to stay the judgment pending appeal pursuant to Federal Rule of Civil Procedure ("Rule") 62(f).  According to JSW, Rule 62(f) limits a supersedeas bond to $25 million under Texas law.  JSW therefore asks this Court to approve a supersedeas bond in the amount of $25 million jointly for all defendants or, alternatively, to approve a supersedeas bond in the amount of $25 million for JSW individually.

Resolving JSW's motion requires this Court to determine whether (1) under Rule 62(f), Texas law limits the required amount of the supersedeas bond to a maximum of $25 million, and (2) if so, whether the defendants are individually or jointly subject to that limit.  For the reasons below, we answer the first question in the negative and therefore do not reach the second question.

## II.    LEGAL STANDARD

Rule 62 governs the stay of proceedings to enforce a judgment.  "Rule 62(d) establishes a general rule that losing parties in the district court can obtain a stay pending appeal only by giving a supersedeas bond." *Enserch Corp. v. Shand Morahan & Co.*, 918 F.2d 462, 463–64 (5th Cir. 1990).  Rule 62(f) provides a separate ground for a stay: "If a judgment is a lien on the judgment debtor's property under the law of the state where the court is located, the judgment debtor is entitled to the same stay of execution the state court would give."  Under the prevailing view of Rule 62(f), a judgment is a lien if a judgment creditor is only required to perform mere "ministerial acts" to transform the judgment into a lien.[1]

---

[1] *See, e.g.*, *Rodriguez–Vazquez v. Lopez–Martinez*, 345 F.3d 13, 14 (1st Cir. 2003) (per curiam) ("[W]here a lien can be procured by minor ministerial acts, this minor burden on the

No. 14-20267

Absent a stay under Rule 62, a prevailing party may seek to enforce a judgment pursuant to Rule 69.[2]

## III.   DISCUSSION

Although this Court has not previously addressed whether "a judgment is a lien on the judgment debtor's property" under Texas law, this Court has addressed the same question under Louisiana law in *Castillo v. Montelepre, Inc.*, 999 F.2d 931 (5th Cir. 1993). After *Castillo*, our district courts have had occasion to address the issue under Texas law, but have drawn differing conclusions. *See EEOC v. Serv. Temps, Inc.*, 782 F. Supp. 2d 288, 291–93 (N.D. Tex. 2011) (noting disagreement among district courts). These decisions guide us today.

### A.   *Castillo* and the District Court Holdings

In *Castillo*, this Court affirmed the district court's decision to stay its judgment pursuant to Rule 62(f) and Louisiana law. 999 F.2d at 941–43. We noted that Rule 62(f)'s "obvious purpose . . . is to allow appealing judgment debtors to receive in the federal forum what they would otherwise receive in their state forum." *Id.* at 942. Indeed, "great deference must be given to the

---

judgment-creditor should not preclude a stay under Rule 62(f)."); *FDIC v. Ann–High Assocs.*, 129 F.3d 113, 1997 U.S. App. LEXIS 35547, at \*9 (2d Cir. 1997) (unpublished) (per curiam) ("[I]f a judgment creditor needs to conduct more than 'ministerial acts' to make the lien effective under the state's lien law, the state's lien law fails to provide for a judgment lien sufficient to satisfy Rule 62(f)."); *United States v. O'Callaghan*, 805 F. Supp. 2d 1321, 1329 (M.D. Fla. 2011); *Marandino v. D'Elia*, 151 F.R.D. 227, 229 (D. Conn.), *aff'd* 7 F.3d 221 (2d Cir. 1993).

[2] JSW alternatively argues that Texas's $25 million bond maximum applies by way of Rule 69(a)(1), which instructs that "[t]he procedure on execution . . . must accord with the procedure of the state where the court is located," unless a federal statute applies. JSW does not brief this argument beyond its conclusory statement that "[b]ecause no federal statute applies here . . . Texas post-judgment enforcement procedure controls, including Texas law governing supersedeas bonds." JSW only cites an unpublished district court order that does not contain any reasoning on this point. Because of such inadequate briefing, JSW has waived this argument. *See, e.g.*, *In re Repine*, 536 F.3d 512, 518 n.5 (5th Cir. 2008) (finding argument waived "due to inadequate briefing" where appellant "fail[ed] to explain" the argument and did not "cite any authority to support her position" (citing *L & A Contracting Co. v. S. Concrete Servs., Inc.*, 17 F.3d 106, 113 (5th Cir. 1994))).

manifest desire of the [state] legislature to allow [a losing party] to appeal without bond." *Id.* Nevertheless, the purpose of Rule 62(f) "is qualified by the requirement that the state forum treat judgments as a lien, or encumbrance, on the property of judgment debtors." *Id.* In that regard, the Court noted that in Louisiana, "the filing of a judgment with the recorder of mortgages creates a 'judicial mortgage'" that burdens certain real and immovable property. *Id.* at 942 n.10 (quoting La. Civ. Code Ann. art. 3300). Thus, Rule 62(f) operates to apply Louisiana law to stays of execution in federal courts located in Louisiana. *See id.* at 942 & n. 2.

Applying *Castillo*, the district court in *Umbrella Bank, FSB v. Jamison*, 341 B.R. 835 (W.D. Tex. 2006), found that Rule 62(f) also operated to apply Texas law. It "observe[d] that the Louisiana process for creating a judicial mortgage is similar to the Texas process for creating a judgment lien." *Id.* at 842. And, as noted above, this Court in *Castillo* strongly implied that a judgment operated as a lien in Louisiana for Rule 62(f) purposes. 999 F.2d at 942 & n. 10; *see also Jamison*, 342 B.R. at 842. "By implication, therefore, the ministerial act of recording an abstract of judgment in a Texas county suffices to satisfy Rule 62(f)'s requirement that 'a judgment is a lien upon property of the judgment debtor.'" *Jamison*, 341 B.D. at 842. (quoting Fed. R. Civ. P. 62(f)). Further relying upon *Castillo*, the district court noted that it "must afford great deference to the manifest desire of the Texas Legislature, which is to afford judgment debtors in Texas the ability to suspend execution of a money judgment by posting a supersedeas amount that excludes any punitive or exemplary damages." *Id.*

However, in *El Paso Independent School District v. Richard R.*, 599 F. Supp. 2d 759 (W.D. Tex. 2008), a different judge within the Western District of Texas disagreed with the holding in *Jamison* and instead concluded that "a Texas judgment is not a lien such that Texas law determines whether

4

Defendant is entitled to a stay in federal court." *Id.* at 764.  The district court reasoned that the process for creating a lien in Louisiana and Texas materially differed:

> In Louisiana, a lien is created "by filing a judgment . . . ." La. Civ. Code art. 3300.  Once filed, the judgment itself creates the lien, and this Court is aware of no other requirements with which the judgment creditor must comply.  By contrast, "[u]nder Texas law, no lien is created by the mere rendition of a judgment." *White v. FDIC*, 19 F.3d 249, 251 (5th Cir. 1994).  Instead, an abstract of judgment is required.  Tex. Prop. Code Ann. 52.001 (Vernon 2007).  This difference is dispositive.
>
> While the filing of a judgment under the Louisiana law is indeed a ministerial act, *Jamison*, 341 B.R. at 842, a Texas abstract of judgment must contain seven elements not necessarily contained in the judgment.  *See* Tex. Prop. Code Ann. § 52.003 (Vernon 2007).  "Since a judgment lien is statutorily created, substantial compliance with the statutory requirements is mandatory before a judgment creditor's lien will attach." *Wilson v. Dvorak*, 228 S.W.3d 228, 233 (Tex. App. 2007) (quotation omitted).  Additionally, "it is the judgment creditor's responsibility to ensure that the clerk abstracts the judgment properly." *Olivares v. Birdie L. Nix Trust*, 126 S.W.3d 242, 248 (Tex. App. 2003).

*Id.* (alterations in original).

After analyzing *Castillo* and the conflicting opinions in *Jamison* and *El Paso ISD*, the district court in *Service Temps, Inc.* concurred with the reasoning and holding in *El Paso ISD*.  *Serv. Temps*, 782 F. Supp. 2d at 291–94.  The court emphasized that "[u]nlike the Louisiana statute, . . . the Texas statutes place greater responsibilities on the creditor to file a technically compliant abstract, and Texas courts have refused to recognize liens for failure to abide by these requirements, as detailed in § 52.003 of the Texas Property Code." *Id.* at 292 (collecting Texas appellate court decisions).  Not only must there be substantial compliance when filing an abstract, but there are additional situations where the filing of an abstract does not constitute a lien. *Id.* (citing Tex. Prop. Code § 52.0012(b) for the proposition that a "judgment

debtor can file a homestead affidavit . . . to obtain a release"); *id.* at 292–93 (citing Tex. Prop. Code § 52.0011(a)(1) for the proposition that the judgment debtor can post security in lieu of a judgment lien if the lien would not "substantially increase the degree to which a judgment creditor's recovery under the judgment would be secured"). Thus, "[n]ot only do the tasks that a judgment creditor must complete to convert a judgment into a lien have substantive consequences if done improperly, the creation of a lien after judgment is not a matter solely under the judgment creditor's control." *Id.* at 293. Accordingly, "a judgment is not a lien under Texas law" because, among other things, "[r]esolving whether the requirements of § 52.0011(a) are satisfied is not merely ministerial." *Id.*

**B.   Creating a Judgment Lien in Texas is not Ministerial**

According to JSW, all that is required to create a judgment lien in Texas is, "after payment of a nominal fee, . . . the recording and indexing of an abstract of judgment" under Tex. Prop. Code § 52.001. From this, JSW contends that "[t]he act of recordation is performed by a county employee and is purely ministerial." JSW acknowledges that an abstract must still be technically correct, but argues that "the fact that section 52.003 'prescribes and defines' the steps to be taken to create a judgment lien is what makes the act ministerial," quoting *Ballantyne v. Champion Builders, Inc.*, 144 S.W.3d 417, 425 (Tex. 2004). Moreover, JSW asserts that "there are other states that similarly require parties recording a judgment to file an abstract of judgment or something other than the judgment itself, yet have been held to be judgment-lien states within the meaning of Rule 62(f)," citing *DeKalb Cnty. Sch. Dist. v. J.W.M.*, 445 F. Supp. 2d 1371, 1377 (N.D. Ga. 2006); *Nester ex rel. Estate of Nester v. Poston*, No. 3:00-CV-277-H, 2002 WL 32833256, at *11 (E.D.N.C. Oct. 8, 2002); and *Van Huss v. Landsberg*, 262 F. Supp. 867, 869 (W.D. Mo. 1967).

No. 14-20267

We disagree and instead find the thorough analyses in *El Paso ISD* and *Service Temps* persuasive. To be sure, the opinion in *Umbrella Bank* evinced much thought and reasoning. But in applying *Castillo*, the *Umbrella Bank* court did not elaborate upon its "observ[ation] that the Louisiana process for creating a judicial mortgage is similar to the Texas process for creating a judgment lien." *See* 341 B.R. at 842. This is vital. While the Louisiana Code requires only the ministerial filing of a judgment, *see* La. Civ. Code Ann. art. 3300; La. Rev. Stat. Ann. § 13:4204, the statutory steps and exceptions set out in the Texas Property Code require far more, as explained in *El Paso ISD* and *Service Temps*.

To briefly summarize, the judgment creditor must first obtain an abstract of the judgment to create a judgment lien in Texas. *Wilson*, 228 S.W.3d at 233. Texas Property Code § 52.003(a) requires that the abstract include "seven elements not necessarily contained in the judgment." *El Paso ISD*, 599 F. Supp. 2d at 764 (citing Tex. Prop. Code Ann. § 52.003).

Moreover, "'substantial compliance with the statutory requirements is mandatory before a judgment creditor's lien will attach,'" *id.* (quoting *Wilson*, 228 S.W.3d at 233), and "'it is the judgment creditor's responsibility to ensure that the clerk abstracts the judgment properly,'" *id.* (quoting *Olivares*, 126 S.W.3d at 248). Indeed, while minor deficiencies may be excusable, Texas courts have rejected abstracts that lacked substantial compliance for a variety of reasons. *See Wilson*, 228 S.W.3d at 234–36 (rejecting abstract that listed judgment debtor by her maiden name rather than her married name); *Citicorp Real Estate, Inc. v. Banque Arabe Internationale D'Investissement*, 747 S.W.2d 926, 929–30 (Tex. App. 1988) (finding lack of substantial compliance where abstract omitted the debtor's address or citation information); *Midland Cnty. v. Tolivar's Estate*, 155 S.W.2d 921, 922 (Tex. Comm'n App. 1941) (finding lack

of substantial compliance where abstract included an interest term not found in the judgment).

Finally, the court in *Service Temps* correctly noted that § 52.003 "is not the only hurdle that a judgment must overcome before becoming a lien under Texas law." 782 F. Supp. 2d at 292. Instead, "a judgment debtor may defeat the creditor's attempt to create a judgment lien on real property by simply posting a security and obtaining a court determination on the relative burdens that a judgment lien places on the parties" under § 52.0011. *Id.* at 292–93. As the district court explained, "[r]esolving whether the requirements of § 52.0011(a) are satisfied is not merely ministerial." *Id.* at 293.

In light of Texas's procedure, we reject JSW's argument based upon *Van Huss*, *DeKalb*, and *Nester* because JSW makes no attempt to show that the procedure in those states is similar to Texas's. In *Van Huss*, the court noted that "the filing of the abstract of the judgment is a ministerial act (in the [Missouri] court) to be performed by the Clerk of the Court," 262 F. Supp. at 869, but JSW does not show us that a judgment creditor in Missouri bears any responsibility for the sufficiency of the abstract. *Nester* is similarly unpersuasive—even if North Carolina law requires a "transcript of the original docket" to be recorded as JSW contends, JSW does not show us what the judgment creditor is required to do.

And JSW's contention that Georgia Code § 9-12-81 satisfied Rule 62(f) in *DeKalb* is wholly misplaced. *DeKalb* did not address § 9-12-81. Instead, it cited § 9-12-80 when it held that, in Georgia, "a judgment is a lien upon the property of a judgment debtor." *DeKalb*, 445 F. Supp. 2d at 1377. Section 9-12-80 states that "[a]ll judgments obtained in the . . . courts of this state . . . shall bind all the property of the defendant in judgment." Ga. Code Ann. § 9-12-80. JSW does not show us that this places any burden upon the judgment

creditor as Texas procedure would.  Thus, JSW's reliance on other states is unavailing.

Accordingly, we find the procedures for creating a judgment lien in Texas, which JSW does not dispute, to be more than mere ministerial acts. Because Texas procedure requires more than mere ministerial acts, a judgment in the state of Texas is not a lien within the purview of Rule 62(f). *See Rodriguez–Vazquez*, 345 F.3d at 14.

## IV. CONCLUSION

JSW's Motion for Stay of Execution of Judgment Pending Appeal is DENIED.   JSW's unopposed Motion to Seal Volume 2 of Appendix is GRANTED.

JONES, Circuit Judge, dissenting.

I respectfully disagree with the majority opinion, which runs counter to Fifth Circuit precedent and adopts a different test for Federal Rule of Civil Procedure 62(f). On its face, the Rule allows for the application of state stay of execution laws where "a judgment is a lien … under the law of the state where the court is located." Fed. R. Civ. P. 62(f). This Court first interpreted the "judgment is a lien" language in *Castillo v. Montelepre, Inc.*, 999 F.2d 931 (5th Cir. 1993) and held that a judgment debtor could invoke a state stay of execution law where the underlying purpose of the rule was met: the judgment creditor was otherwise afforded sufficient security under state law. *Id.* at 942. The judgment creditor was afforded sufficient security in this case, given that it would receive a $25 million statutory bond in addition to the opportunity to create a judgment lien. JSW should therefore be allowed to invoke Rule 62(f).

The majority opinion, however, uses a ministerial acts test to determine if "a judgment is a lien," but does not explain how it relates to this circuit's case law or why a new test is needed. In my view, Rule 62(f) applies even under the majority's test, since the creation of a judgment lien in Texas cannot be said to involve more than a ministerial act. Therefore, under either test, JSW should be given the benefit of Texas law to which it is entitled under the Federal Rules of Civil Procedure.

**A. Fifth Circuit Precedent Calls for the Application of Rule 62(f)**

This Court has already determined Rule 62(f) is applicable where a judgment creditor is otherwise afforded sufficient security under state law. In *Castillo*, the court determined that the judgment creditors were afforded sufficient security even though state stay of execution rules—applied through Rule 62(f)—completely exempted the Fund from paying an appeal bond. Sufficient security was a statutory obligation to pay judgments from the Fund. *Id.* But sufficient security need not be a source of money equal to the dollar

amount of the underlying judgment. *Id.* The court noted that in the event the Fund's assets were less than the value of the unpaid judgments, each judgment creditor would get a pro-rata share of what was left of the Fund. *Id.* Here, MM Steel would benefit from a $25 million dollar bond under the Texas statute in addition to whatever value might be derived from creating a judgment lien through a judgment abstract. The Texas legislature has considered $25 million to be enough security to cap appeal bonds at that amount. Tex. Civ. Prac. & Rem. Code Ann. § 52.006(b). The Federal Rules of Civil Procedure allow judgment debtors to use state laws that completely exempt them from the need to post bond based on a judgment lien alone. Fed. R. Civ. P. 62(f). A combination of both is surely sufficient security for MM Steel.

## B. Though Irreconcilable with Fifth Circuit Precedent, the Majority's Ministerial Acts Test Still Entitles JSW to State Law

The First Circuit's ministerial acts test employed by the majority is irreconcilable with *Castillo*. The majority purports to examine the number of steps the judgment creditor must take to secure a lien and the likelihood of the creditor's success in doing so. *Castillo*, however, renders this line of inquiry irrelevant. The judgment creditor in *Castillo* did not just face a difficult lien process, but a complete impossibility. *Castillo*, 999 F.2d at 942. The type of property owned by the judgment debtor was not subject to a judgment lien in Louisiana. *Id.* Yet the court still held Rule 62(f) applicable. *Id.*

Even if the ministerial act test applies, JSW should be entitled to Texas supersedeas law under Rule 62(f). The majority overstates the difficulty of filing an abstract of judgment. An abstract of judgment document is not a voluminous stack of papers. It is a single page with a few simple fields, like names and addresses of the parties. Abstract of Judgment Form, United States District Court, Southern District of Texas, *available at* http://www.txs.uscourts.gov/district/formsfees/abstjdmi.pdf. The fact that the

No. 14-20267

process involves opportunities for creditors to make mistakes should not automatically mean the process is not "ministerial." Even a process that simply required a government employee to stamp the judgment could be mishandled if the creditor submits the wrong judgment. Any competent attorney who has just won a judgment ought to be able to complete an abstract with ease. The forms for Texas abstracts of judgment are readily available on the internet. Correcting a mistake in fact could not take more than a few moments. Even if a county employee may reject the filing of an abstract for technical omissions—such as minor defects in the names of the parties—this only underscores the ministerial nature of the process; there is no room for discretion. Curiously, the majority's final reason that the process is overly difficult and uncertain for the judgment creditor posits that the debtor could defeat the lien by posting a supersedeas bond. Tex. Prop. Code Ann. § 52.0011. In such a situation, however, the debtor that pays for a supersedeas bond will not be invoking rule 62(f). Ultimately, the judgment lien process in Texas entails filling out a simple form and recording it with a government employee. Preparing and recording the lien are therefore mere ministerial acts. JSW should be entitled to avail itself of Texas law under Rule 62(f).

I respectfully dissent.