Cathey E. WILSON, Benny Wilson, and RMCVanguard Mortgage Corporation, Appellants/Cross–Appellees,

v.

Katherine Beam Hooper DVORAK, Appellee/Cross–Appellant.

No. 04–06–00276–CV.

Court of Appeals of Texas, San Antonio.

April 25, 2007.

Charles E. Booth, Fred R. Jones, Goode Casseb Jones Riklin Choate & Watson, P.C., San Antonio, for appellants.

Charles E. Oualline, Law Office of Charles E. Oualline, San Antonio, Richard O. Trevino, Bandera, for appellee.

Sitting: CATHERINE STONE, Justice, KAREN ANGELINI, Justice, STEVEN C. HILBIG, Justice.

## OPINION

Opinion by CATHERINE STONE, Justice.

In this case, we are asked to determine whether an abstract of judgment indexed in local property records by a judgment

creditor was sufficient to establish an enforceable judgment lien against the judgment debtor's real property when the creditor identified the debtor in the abstract of judgment only by her maiden name, and not by her married name, which is the name in which the debtor holds title to the property at issue. Under the specific facts of this case, we hold that the abstract of judgment filed by the creditor did not create an enforceable judgment lien; therefore, we reverse the trial court's judgment and render judgment in favor of the appellants/cross-appellees, Cathey and Benny Wilson and RMCVanguard Mortgage Corporation.

## BACKGROUND

On September 16, 1990, prior to her marriage to Phillip M. Dvorak, Katherine Beam Hooper (hereinafter "Hooper–Dvorak") recovered a judgment against Donna Denise Arledge in County Court at Law No. 9, Bexar County, Texas. The judgment was in the amount of $18,858, plus court costs and interest at the rate of 10% per annum. Hooper–Dvorak's subsequent efforts to execute on and recover the judgment against Arledge were unsuccessful.

■ To prevent her judgment from becoming dormant, Hooper–Dvorak extended her judgment against Arledge on August 15, 2000. A writ of execution was later issued by the Bexar County Clerk, directing any sheriff or constable to seize and sell Arledge's property in satisfaction of the judgment. The writ of execution was returned nulla bona,[1] and Hooper–Dvorak recorded the writ in the Judgment of Records for Bexar County Court at Law No. 9.

On July 2, 2001, Arledge married Eric T. Nix and changed her name to "Donna Nix" (hereinafter "Arledge–Nix"). Arledge–Nix and her husband became the owners of a home located at 156 Glenn Valley Circle in Bandera County, Texas (the "Property") following their marriage.[2] In connection with their purchase, the Nixes borrowed $165,600 from Long Beach Mortgage Company ("Long Beach"), giving Long Beach a "first and superior vendor's lien" and a "first lien deed of trust" as security for their real estate note. Long Beach's deed of trust was duly recorded in the real property records of Bandera County, Texas on June 12, 2003.

On August 8, 2003, Hooper–Dvorak obtained an abstract of judgment from the Bexar County Court at Law No. 9 to record in the Bandera County Real Property Records. The abstract of judgment identified Hooper–Dvorak and Arledge–Nix using only their maiden names: "Katherine Beam Hooper" and "Donna Denise Arledge." Realizing that Arledge–Nix was no longer known as "Donna Denise Arledge," Hooper–Dvorak prepared an affidavit of judgment to record in conjunction with her abstract of judgment on August 19, 2003. This affidavit was executed by Hooper–Dvorak in an effort to cross-reference the name "Donna Denise Arledge" with the name "Donna Nix" in the real property records. This affidavit of judgment provided:

> My name is KATHERINE BEAM HOOPER and I am the same person as also known by my married name of

---

**1.** "The term nulla bona refers to a form of return by a sheriff or constable upon an execution when a judgment debtor has no seizable property within the jurisdiction." *Caprock Inv. Corp. v. Montgomery First Corp.*, No. 11-04-00291-CV, 2005 WL 3074164, *1 n. 1 (Tex.App.-Eastland 2005, pet. denied) (mem.op.).

**2.** The warranty deed executed in connection with this purchase was signed by only Eric Nix.

KATHERINE BEAM HOOPER DVO-RAK ... I am willingly executing this instrument as my free act and deed for the purpose of proving an existing Judgment Lien against a certain person whose name has changed....

I am the Plaintiff in Cause No. 190926, in Bexar County Court at Law No. 9, Texas, in which Cause a Judgment was rendered on the 16th day of September 1990 against DONNA DENISE ARLEDGE, Defendant. Abstracts of this Judgment have been recorded in Bexar County, Travis County, and in Hays County, Texas, the latter Abstract recorded on August 13, 2003.

Recorded contemporaneously with this Affidavit in the Hays County, Texas, Deed Records is a certified copy of the marriage license of DONNA DENISE ARLEDGE, showing her marriage to ERIC NIX. The purpose of this Affidavit is to show that I enjoy a Judgment against DONNA DENISE ARLEDGE NIX, who is the same person and also known as DONNA DENISE AR-LEDGE, against whom an Abstract of Judgment has been filed in Hays County, Texas and in other counties.

Hooper–Dvorak contemporaneously recorded her abstract of judgment and affidavit of judgment in the Bandera County Real Property Records on January 30, 2004. When Hooper–Dvorak recorded the documents, however, the Bandera County Clerk indexed the abstract of judgment only under the names "Hooper, Katherine Beam" (grantor) and "Arledge, Donna Denise" (grantee). The clerk further recorded and indexed the affidavit of judgment under "Dvorak, Katherine Beam Hooper" (grantor) and "Public" (grantee). The clerk did not record or index either of the documents under any of the following names: "Nix, Donna"; "Nix, Donna Denise"; or "Nix, Donna Denise Arledge."

Hooper–Dvorak never checked the Bandera County Real Property Records to determine if her affidavit had been properly filed. The failure to file the affidavit under the name "Nix" was apparently not discovered until after Arledge–Nix sold the Property.

On October 27, 2004, Cathey and Benny Wilson (the "Wilsons") purchased the Property from the Nixes. The Wilsons secured a $179,550 loan from RMCVanguard Mortgage Corporation ("RMCV") in connection with the purchase, which was used in part to extinguish the first lien held by Long Beach. Since Hooper–Dvorak's abstract of judgment and affidavit of judgment were not indexed in the Bandera County Real Property Records under the last name "Nix," neither document was discovered when the Wilsons and RMCV searched the property records prior to closing. The Wilsons therefore gave RMCV a deed of trust as security for their loan, reciting that RMCV would "assume the first lien position as to the Property, displacing [Long Beach] the previous first lien holder." The general warranty deed executed in association with the transaction likewise reflected that RMCV became an assignee of the first vendor's lien and superior title reserved by the Nixes in the warranty deed. Both the warranty deed and deed of trust were duly recorded in the Bandera County Real Property Records on November 1, 2004.

Hooper–Dvorak subsequently learned of the sale of the Property to the Wilsons, and filed suit against the Wilsons and RMCV to foreclose her judgment lien against the Property on January 24, 2005. Hooper–Dvorak's petition asserts that because her unsatisfied judgment lien is superior to the lien enjoyed by RMCV, the court should order a sale of the Property and satisfy her judgment with the proceeds of the sale. The Wilsons and RMCV

responded to the petition by claiming: (1) the abstract of judgment fails to create an enforceable judgment lien against the Property; and (2) no judgment lien could attach to the Property because the Property served as a homestead at the time the abstract of judgment was recorded. The Wilsons and RMCV also filed a third-party petition against the Nixes for breach of warranty of title and a counter claim against Hooper–Dvorak, seeking a declaration that Hooper–Dvorak's purported judgment lien is unenforceable and a judgment quieting title.

A bench trial was held on September 26, 2005. The parties stipulated to most of the underlying facts, except as to the homestead issue. After hearing testimony from Hooper–Dvorak, Eric Nix, Benny Wilson, and the Chief Deputy Clerk of Bandera County (Ann Ruthven), the trial court entered judgment on January 29, 2006 in favor of Hooper–Dvorak. The court's judgment provides that the abstract of judgment filed by Hooper–Dvorak created a valid and enforceable judgment lien against the Property in the amount of $81,526.48, plus court costs and attorney's fees. The judgment states that such lien is "superior to any and all rights in and to the Property held by the [Wilsons] and RMCVanguard." The judgment also provides that "the Property was not a homestead when the lien attached" to the Property. The judgment further provides that Eric Nix is liable to the Wilsons and RMCV on their breach of warranty of title claim and awards the Wilsons and RMCV judgment in the amount of $81,526.48, plus court costs. Finally, the judgment denies the Wilsons and RMCV's requests to quiet title and for declaratory relief. Findings of fact and conclusions of law were entered by the trial court following its ruling.

The Wilsons and RMCV subsequently filed a "Motion to Modify Final Judgment, or, in the alternative, Motion for New Trial," requesting the court to subrogate RMCV to the rights of Long Beach. The Wilsons and RMCV claimed that they were entitled to subrogation because $170,981.43 of RMCV's purchase money loan to the Wilsons was used to extinguish the Nixes' Long Beach mortgage that encumbered the Property. The trial court granted the motion in part and modified its final judgment. The court's modified order provides: "RMCVanguard is subrogated to the rights of Long Beach and RMCVanguard is the first lien holder on the Property to the extent of $170,981.43, the amount by which RMCVanguard advanced funds to liquidate the prior lien of Long Beach." The Wilsons, RMCV, and Hooper–Dvorak each appeal the trial court's judgment.

## STANDARD OF REVIEW

The primary issue in this appeal involves the interpretation of a statute. We review matters of statutory construction *de novo*. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 357 (Tex.2000). When construing a statute, our objective is to determine and give effect to the Legislature's intent. *McIntyre v. Ramirez*, 109 S.W.3d 741, 745 (Tex.2003). In discerning that intent, we begin with the plain and common meaning of the statute's words. *Id.* When the statutory language is unambiguous, we must apply the statute as written. *RepublicBank Dallas, N.A. v. Interkal, Inc.*, 691 S.W.2d 605, 607 (Tex.1985). However, we will "not decide the scope or meaning of statutory language by a bloodless literalism in which text is viewed as if it had no context." *West Anderson Plaza v. Feyznia*, 876 S.W.2d 528, 532 (Tex.App.-Austin 1994, no writ). We presume the Legislature intended a just and reasonable result in enacting a statute, TEX. GOV'T CODE ANN. § 311.021(3) (Vernon 2005); therefore, we avoid statutory interpreta-

tions that would produce absurd results. *Sharp v. House of Lloyd, Inc.*, 815 S.W.2d 245, 249 (Tex.1991); *Del Indus., Inc. v. Tex. Workers' Comp. Ins. Fund*, 973 S.W.2d 743, 747–48 (Tex.App.-Austin 1998), *aff'd*, 35 S.W.3d 591 (Tex.2000). We consider each section and word in connection with the entire statute to ascertain its meaning and promote the statute's purpose. *Harris County v. Williams*, 981 S.W.2d 936, 938 (Tex.App.-Houston [1st Dist.] 1998, pet. denied).

## ABSTRACTS OF JUDGMENT

 "Under Texas law, no lien is created by the mere rendition of a judgment." *Citicorp Real Estate, Inc. v. Banque Arabe Internationale D'Investissement*, 747 S.W.2d 926, 929 (Tex.App.-Dallas 1988, writ denied). To create an enforceable judgment lien against real property owned by the judgment debtor, the judgment creditor must comply with the requirements of Chapter 52 of the Texas Property Code. *Id.; see* TEX. PROP.CODE ANN. §§ 52.001 *et seq.* (Vernon 2007). "The judgment creditor's first step in creating a judicial lien is to obtain an abstract of the judgment." *Citicorp Real Estate*, 747 S.W.2d at 929; *see* TEX. PROP.CODE ANN. § 52.002. The purpose of an abstract of judgment is to create a lien against the debtor's property and to provide notice to subsequent purchasers and encumbrancers of the existence of the judgment and the lien. *Olivares v. Nix Trust*, 126 S.W.3d 242, 247 (Tex.App.-San Antonio 2003, pet. denied).

By statute, an abstract of judgment must include:

(1) the names of the plaintiff and defendant;

(2) the birthdate and driver's license number of the defendant if available to the clerk or justice;

(3) the number of the suit in which the judgment was rendered;

(4) the defendant's address, or if the address is not shown in the suit, the nature of citation and the date and place of service of citation;

(5) the date on which the judgment was rendered;

(6) the amount for which the judgment was rendered and the balance due;

 (7) the amount of the balance due, if any, for all child support arrearage; and

(8) the rate of interest specified in the judgment.

TEX. PROP.CODE ANN. § 52.003. "Since a judgment lien is statutorily created, substantial compliance with the statutory requirements is mandatory before a judgment creditor's lien will attach." *Olivares*, 126 S.W.3d at 248. Substantial compliance allows for only a minor deficiency in an element of the abstract of judgment as opposed to omitting a statutorily required element altogether. *Id.* "It is well settled in Texas that it is the judgment creditor's responsibility to ensure that the clerk abstracts the judgment properly." *Id.* at 247.

 The statute mandates that the clerk "immediately record in the county real property records each properly authenticated abstract that is presented for recording." TEX. PROP.CODE ANN. § 52.004. At the same time the abstract is recorded, the clerk is required to enter on the alphabetical index of the real property records the name of each plaintiff and each defendant, and the volume and page or instrument number in the record in which the abstract is recorded. *Id.* When properly recorded and indexed, an abstract of judgment creates a judgment lien that is superior to the rights of subsequent purchasers and lien holders. *John F. Grant Lumber*

*Co. v. Hunnicutt,* 143 S.W.2d 976, 976 (Tex.Civ.App.-Waco 1940, no writ). With these principles in mind, we now turn to the parties' arguments.

### DISCUSSION

The Wilsons and RMCV contend that Hooper–Dvorak's abstract of judgment did not comply with the statutory requirements necessary to make it a valid and enforceable judgment lien against the Property. Specifically, they complain that Hooper–Dvorak did not comply with the requirements of the Texas Property Code concerning judgment liens when: (1) she identified Arledge–Nix in the abstract of judgment by her maiden name "Donna Denise Arledge" instead of by her married name "Donna Nix," which is the name in which she holds title to the Property; and (2) she indexed the abstract of judgment under Arledge–Nix's maiden name, as opposed to her married name, in the real property records. By contrast, Hooper–Dvorak insists that she created an enforceable judgment lien against the Property by complying with the clear and unambiguous language of the statute. We, however, agree with the Wilsons and RMCV because application of the plain language of the statute would lead to an absurd result that the Legislature could not have possibly intended, *i.e.,* the judgment creditor may enforce her lien against innocent purchasers for value who had no notice of the judgment lien due to the creditor's abstracting and indexing of the judgment under the debtor's maiden name.

■ The record reflects that the name of the judgment debtor-defendant at the time of the judgment in the prior litigation was "Donna Denise Arledge." The judgment from such litigation reflects that Hooper–Dvorak recover her award from "Donna Denise Arledge." Consistent with her earlier judgment, Hooper–Dvorak identifies the judgment debtor-defendant in her abstract of judgment as "Donna Denise Arledge." *See* TEX. PROP.CODE ANN. § 52.003(a)(1). The abstract of judgment was then indexed by the county clerk in the alphabetical index accordingly, showing the name of the judgment debtor-defendant as "Arledge, Donna Denise." *See id.* § 52.004(b)(2). Although Hooper–Dvorak appears to have complied with the plain language of the statute by both showing the "name[ ] of the ... defendant" in the abstract of judgment and having the clerk enter the abstract on the alphabetical index to the real property records with "the name of [the] defendant in the judgment," *see id.* §§ 52.003–.004, nonetheless the abstract failed to provide notice as contemplated by the statute.

■ One of the primary purposes of the statute is to provide notice to subsequent purchasers and encumbrancers of the existence of the judgment and the lien. *Citicorp Real Estate,* 747 S.W.2d at 929. The Wilsons and RMCV had no actual knowledge of the judgment lien and possessed no facts sufficient to put them on notice of the lien in the instant case. A reasonable search of the Bandera County Real Property Records would have revealed nothing of Hooper–Dvorak's judgment lien since the Wilsons and RMCV would be searching under the name "Nix, Donna," not "Arledge, Donna Denise," because "Nix" is the name in which she held title to the Property. Although Hooper–Dvorak attempted to file an affidavit of judgment in an effort to cross-reference the name "Donna Denise Arledge" with the name "Donna Nix" in the real property records, such affidavit was mistakenly indexed under "Public" and not "Nix, Donna." As a result of this mistake, subsequent purchasers and encumbrancers of the Property had no way of knowing that Hooper–Dvorak "enjoy[ed] a judgment

against Donna Denise Arledge Nix, who is the same person ... known as Donna Denise Arledge." [3]

It appears that the Wilsons and RMCV would have been able to ascertain the existence of the abstract of judgment only upon reviewing each and every record in the Bandera County Real Property Records. By reviewing every record, only then would they have discovered Hooper–Dvorak's affidavit of judgment, which cross-referenced the abstract of judgment. Requiring a subsequent purchaser to search the entire real property records for an existing lien was certainly not within the contemplation of the Legislature when it enacted the statute. *See Womack v. Paris Grocer Co.,* 166 S.W.2d 366, 368 (Tex.Civ.App.-Galveston 1942, writ ref'd) (noting that the reason for "requiring that the names of the plaintiff and the defendant in the judgment be indexed in their alphabetical order is that persons searching the record for the purpose of determining the existence of judgment liens may have the means of ascertaining, with promptness and certainty, whether or not such liens exist, without having to search the entire records.").

While Hooper–Dvorak may have complied with the plain language of the statute, her abstract of judgment failed to fulfill the very purposes for which an abstract of judgment is recorded and indexed. Texas has long recognized that "[a] judgment lien holder is not in the same attitude as an innocent purchaser for value without notice ... If h[er] lien fails to attach, [s]he loses nothing. H[er] judgment still remains unimpaired in its full amount." *First State Bank of Amarillo v.*

*Jones,* 107 Tex. 623, 183 S.W. 874, 876 (Tex.1916). This principle holds true here. As a result, we conclude the trial court erred by concluding that Hooper–Dvorak's abstract of judgment created an enforceable judgment lien.

The situation before us is analogous to the one presented in *Ball v. Vogtner,* 362 So.2d 894 (Ala.1978). In *Ball,* Kitty Ball filed suit against Mary Morgan on May 20, 1971. 362 So.2d at 896. During the course of the trial, Mary married B.B. Collins and became Mary Collins. *Id.* On December 15, 1971, the property at issue was conveyed to Mary, and she took title to the property under her married name— Mary Collins. *Id.* On May 17, 1972, Ball recovered judgment against Mary. *Id.* The judgment, however, was rendered against Mary Morgan, not Mary Collins. *Id.* Ball subsequently recorded a certificate of judgment in the office of the judge of probate in Mobile County, Alabama. *Id.*

Mary Collins later conveyed the property at issue to the Vogtners.[4] At closing, counsel for the Vogtners learned that Mary Collins may have had a judgment entered against her and notified an employee of the title insurance company of this fact. *Id.* The title company's search of the judgment records, however, revealed no judgments against Mary Collins and the sale to the Vogtners proceeded. *Id.*

Ball eventually filed suit against the Vogtners to establish a judgment lien against the property. *Id.* at 895. After a trial on the merits, the trial court entered judgment holding that "the Vogtners had neither actual or constructive knowledge of

---

**3.** The fact that Hooper–Dvorak even attempted to file the affidavit of judgment suggests she recognized her abstract of judgment failed to designate the parties with sufficient degree of accuracy to place persons searching the records on notice of the judgment.

**4.** The facts of the case reflect that there was a sham conveyance before the conveyance to the Vogtners, but such conveyance is irrelevant to the outcome of the case. *Id.*

the judgment against Mary Morgan; therefore, the judgment did not constitute a lien against the property." *Id.* at 896. On appeal to the Alabama Supreme Court, the court had to determine whether Ball's certificate of judgment provided constructive notice of her lien. *Id.* at 897. The court discussed the statutory requirements for establishing a judgment lien in Alabama, which are similar to the statutory requirements in Texas: "For a judgment to create a lien on the property of the defendant, a certificate must be filed in the office of the judge of probate of the county in which the property is situated which shows: (1) the style of the court which entered the judgment, (2) the amount and date thereof, (3) the amount of costs, (4) the names of the parties thereto, (5) the name of the plaintiff's attorney, and (6) the address of each defendant or respondent, as shown in the court proceedings." *Id.* The court further noted that the statutory requirements as to the contents of the certificate must be strictly observed to establish a lien. *Id.*

The court ultimately affirmed the trial court's judgment, holding that the certificate of judgment failed to create a judgment lien against the property. *Id.* The court explained:

> [Ball] properly filed a certificate; however, she listed the judgment debtor as Mary Morgan instead of Mary Collins. The certificate, as filed, does establish a valid lien between [Ball] and Mary Collins, but not as to the Vogtners since the name shown in the certificate is insufficient to impart constructive notice to third parties.
>
> As between the judgment creditor and judgment debtor a judgment may afford a valid lien despite inaccuracies or omissions in the docket or index in respect of the names or descriptions of the parties. In order to make the

lien of a judgment effective as against third persons, however, it is ordinarily necessary that the docket and index should disclose the names of both parties, plaintiff as well as defendant, and designate them with such a degree of accuracy as to charge persons searching such records with notice of the judgments or to put them on inquiry.

> Mary Collins both acquired and conveyed title to the property in her name as such. Nowhere in the Vogtners chain of title does the name Mary Morgan appear. The Vogtners possessed no facts sufficient to put them on inquiry or to enable them to discover the existence of the judgment lien against Mary Morgan.... In the absence of actual knowledge, the purchaser is charged with notice of that which appears on the face of all the instruments by which he takes title, but is not bound to inquire into collateral circumstances. A reasonable search of the records in the instant case would have revealed nothing of the judgment lien since the parties would be searching under the name Mary Collins, not Mary Morgan.

*Id.* (citations omitted).

*Ball* supports our view that Hooper-Dvorak's abstract of judgment did not create a judgment lien that provided notice to subsequent purchasers. Because the recorded abstract of judgment failed to provide such notice, we sustain the Wilsons and RMCV's first issue on appeal.

### CONCLUSION

Based on the foregoing, we hold the abstract of judgment indexed by Hooper-Dvorak did not create an enforceable judgment lien. The trial court's judgment is therefore reversed and judgment is rendered in favor of the appellants/cross-ap-

pellees, Cathey and Benny Wilson and RMCVanguard Mortgage Corporation.